PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 11-2026

———————————


PATRICIA WRIGHT; KEVIN WEST,
on behalf of themselves
and all others similarly situated,
                                    Appellants

v.

OWENS CORNING

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-09-cv-01567)
District Judge: Honorable Joy Flowers Conti

———————————

Argued November 17, 2011

Before: RENDELL, AMBRO, and
NYGAARD, Circuit Judges

(Opinion filed: May 18, 2012)

Jason T. Baker, Esquire
Michael A. McShane, Esquire
Audet & Partners
221 Main Street, Suite 1460
San Francisco, CA   94105

David Alexander Barnes, Esquire (Argued)
Charles M. Golden, Esquire
Obermayer, Rebmann, Maxwell & Hippel
1617 John F. Kennedy Boulevard
One Penn Center, 19th Floor
Philadelphia, PA   19103-0000
Robert J. Cynkar, Esquire
Cuneo, Gilbert & LaDuca
106-A South Columbus Street
Alexandria, VA   22314

James T. Davis, Esquire
Davis & Davis
107 East Main Street
Uniontown, PA   15401-0000

Clayton D. Halunen, Esquire
Shawn J. Wanta, Esquire
Halunen & Associates
1650 IDS Center
80 South Eighth Street
Minneapolis, MN   55402

Charles J. LaDuca, Esquire
Brendan S. Thompson, Esquire
Cuneo, Gilbert & LaDuca

507 C Street, N.E.
Washington, DC  20002-0000

Arnold Levin, Esquire
Charles E. Schaffer, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA   19106-0000

Robert K. Shelquist, Esquire
Lockridge Grindal Nauen
100 Washington Avenue South, Suite 2200
Minneapolis, MN   55401-0000

   Counsel for Appellants

Elizabeth M. Chiarello, Esquire
Michael W. Davis, Esquire
Colleen M. Kenney, Esquire
Kara L. McCall, Esquire (Argued)
Sidley Austin
One South Dearborn Street
Chicago, IL   60603
Matthew T. Logue, Esquire
Arthur H. Stroyd, Jr. Esquire
Del Sole Cavanaugh Stroyd
The Waterfront Building
200 First Avenue, Suite 300
Pittsburgh, PA   15222

   Counsel for Appellee

---

## OPINION OF THE COURT

---

AMBRO, Circuit Judge

This appeal concerns the application of our recent decision in *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010), establishing a new test for determining when a "claim" exists under the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.* Plaintiffs Patricia Wright and Kevin West (collectively, the "Plaintiffs") filed a putative class action seeking damages related to defects in roofing shingles manufactured by Owens Corning.[1] The District Court granted Owens Corning's motion for summary judgment, determining that the Plaintiffs' claims were discharged under the confirmed reorganization plan (the "Plan") of Owens Corning and certain of its subsidiaries (collectively, the "Debtors"). Specifically, the Court held that, based on *Grossman's*, the Plaintiffs held "claims" under the Code, and that the published notices of the Debtors' Chapter 11 bankruptcy cases afforded them procedural due process. We agree that the Plaintiffs held claims under the Code, but, under the circumstances before us, disagree that they were afforded procedural due process. Hence their claims were not discharged. We thus affirm in part and reverse in part the Court's judgment, and remand the case for further proceedings.

---

[1] The Plaintiffs incorrectly named Owens Corning as the defendant rather than Owens Corning Sales LLC. Nonetheless, we continue to refer to the defendant as "Owens Corning."

4

## I.     Background

The Plaintiffs' story presents the challenge of administering unknown future claims in bankruptcy. In late 1998 or early 1999, Wright hired a contractor, who installed shingles manufactured by Owens Corning on her roof. In 2005, West similarly hired a contractor, who likewise installed shingles manufactured by Owens Corning on his roof. They both discovered leaks in 2009, and determined that the shingles had cracked. Each sent warranty claims to Owens Corning. It rejected Wright's claim in part and West's claim in full. In November 2009, Wright filed a class action against Owens Corning alleging fraud, negligence, strict liability, and breach of warranty. West later was added as a named plaintiff.

Meanwhile, back in October 2000, the Debtors filed their Chapter 11 bankruptcy petitions. In November 2001, the Bankruptcy Court set a claims bar date of April 15, 2002. All claimants were required to file proofs of claim on or before that date. It also approved a bar date notice, which was published twice in The New York Times, The Wall Street Journal, and USA Today, among other publications. The notice directed claimants to file proofs of claim if they held claims[2] that arose prior to the filing of the Debtors' bankruptcy cases. It specifically identified claims relating to "the sale, manufacture, distribution, installation and/or marketing of products by any of the Debtors, including without limitation . . . roofing shingles . . . ."

---

[2] The notice defined "claim" as it is defined in the Bankruptcy Code: "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C § 101(5).

The Debtors' bankruptcy proceedings resulted in the filing of the Plan in June 2006. Soon after, the Bankruptcy Court approved notices of the confirmation hearing for the Plan, including a generic notice to most unknown claimants.[3] This notice was published in The New York Times, The Wall Street Journal, and USA Today, among other publications. It stated, in bold, that the Plan might affect the rights of holders of claims against the Debtors.

Two other notices of the Debtors' bankruptcy proceedings also were published. In June 2006, notice of the hearing to consider the disclosure statement was published in The New York Times, The Wall Street Journal, USA Today, and the Toledo Blade. In November 2006, notice of the Plan's date of confirmation, September 26, 2006 (the "Confirmation Date"), was published in the same four publications. The Plan provided for the discharge of all claims relating to the Debtors under the Bankruptcy Code that

---

[3] For notice purposes, claimants are divided into "known" and "unknown." A "known" claimant (or creditor) "is one whose identity is either known 'or reasonably ascertainable by the debtor.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)). In contrast, "[a]n 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)) (second alteration in original). On appeal, the parties do not contest that the Plaintiffs were unknown claimants.

arose before the Confirmation Date.[4]  The order confirming the Plan (the "Confirmation Order") likewise provided that all claims arising before the Confirmation Date were discharged.

When the Plaintiffs filed their class action, there was little dispute as to the effect of Owens Corning's bankruptcy on the Plaintiffs' claims against it.  Based on our much-maligned decision in *Avellino v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332 (3d Cir. 1984), a "claim" under the Bankruptcy Code did not arise until a cause of action accrued under applicable non-bankruptcy law—that is, when a claimant possessed a right to payment.  In this context, the Plaintiffs' cause of action did not accrue until the defects in the roofing shingles manifested in 2009, years after the Confirmation Date.[5]  Thus, at the time they filed the class action, the Plaintiffs were correct to conclude that they did not hold "claims" under the Code based on the action.  But subsequently we overruled *Frenville* with our *en banc*

---

[4]  Section 1141 of the Bankruptcy Code provides that "confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not (i) a proof of the claim based on such debt is filed . . . ; (ii) such claim is allowed . . . ; or (iii) the holder of such claim has accepted the plan."  11 U.S.C. § 1141(d)(1)(A).  "Debt" is defined as liability on a claim.  *Id.* § 101(12).

[5]  This assumes that the applicable law comes from either Illinois or Pennsylvania, the states where the Plaintiffs reside.  Under either's law, as with most states' laws, a right to payment does not accrue until a product defect is evident and an individual suffers actual damages.  *See Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995); *Gibson v. Commonwealth*, 415 A.2d 80, 83 (Pa. 1980).

decision in *Grossman's*, in which we rejected *Frenville*'s "accrual test," and in its place established the rule that a "'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." 607 F.3d at 125.

Based on *Grossman's*, Owens Corning filed its motion for summary judgment, arguing that the Plaintiffs' claims were discharged under the Plan and Confirmation Order. Before the District Court, the Plaintiffs argued that *Grossman's* is limited to asbestos-related cases, it does not apply retroactively, and they were not afforded due process because the notices of the bankruptcy proceedings were insufficient. The Court rejected these arguments, holding that the Plaintiffs' claims were discharged under the Plan and Confirmation Order.

On appeal, the Plaintiffs advance two arguments. First, they argue that the District Court applied *Grossman's* too rigidly, creating the unworkable result that persons who did not anticipate future tort actions at the time of a bankruptcy proceeding nonetheless possess claims under the Bankruptcy Code that are discharged. The test set out in *Grossman's*, they assert, requires that the debtor and claimant anticipate a future tort action at the time of the bankruptcy proceedings for a claim to exist. Second, they claim that the District Court's due process analysis fell short because it based its ruling on our precedent holding that unknown claimants generally are entitled to notification by publication.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§1332(a) and (d)(2). We have jurisdiction to review the Court's final order under 28 U.S.C. § 1291. We review a

8

district court's grant of summary judgment *de novo*. *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All reasonable inferences from the record must be drawn in favor of the nonmoving party," and we "may not weigh the evidence or assess credibility." *MBIA Ins.*, 426 F.3d at 209. For there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for" it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. *Grossman's* and "Claims" under the Bankruptcy Code

### A. Waiver

In addressing whether the Plaintiffs held claims under the Bankruptcy Code, we first confront the effect of their failure to advance to the District Court their argument on appeal regarding *Grossman's*. Before the District Court, the Plaintiffs contended only that *Grossman's* is limited to asbestos-related claims and should not apply retroactively. They advance neither argument to us. We generally follow "a well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court." *Lloyd v. Hovensa*, 369 F.3d 263, 272–73 (3d Cir. 2004). Yet this principle "is one of discretion rather than jurisdiction," *Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69 (3d Cir. 1983), and we may consider an argument raised for the first

9

time on appeal in "exceptional circumstances," such as the when the "public interest . . . so warrants." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834–35 (3d Cir. 2011) (quoting *Rogers v. Larson*, 563 F.2d 617, 620 n.4 (3d Cir. 1977)); *see also Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) (noting that "'the matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases'" (quoting *Council of Alter. Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999)). The principle also is best applied to issues that are fact-dependent or the resolution of which on a basis not argued to the district court will surprise the parties. *Barefoot Architect*, 632 F.3d at 835.

We believe that the "public interest" weighs heavily toward our consideration of whether the Plaintiffs held claims under the Bankruptcy Code. What constitutes a claim has the potential to affect a wide range of proceedings, the issue is purely legal, the scope of *Grossman's* is generally at issue in this case, and addressing whether the Plaintiffs held claims will clarify the test we established in *Grossman's*. This is an appropriate situation for us to exercise our discretion.

## B.  "Claims" Under the Bankruptcy Code

Consideration of the treatment of unknown future claims involves two competing concerns: the Bankruptcy Code's goal of providing a debtor with a fresh start by resolving all claims arising from the debtor's conduct prior to its emergence from bankruptcy; and the rights of individuals who may be damaged by that conduct but are unaware of the potential harm at the time of the debtor's bankruptcy. In overruling *Frenville*'s "accrual test," we recognized that it had been "universally rejected" based on its conflict with the Code's broad definition of the term "claim." *Grossman's*,

10

607 F.3d at 120–21 (quoting *Cadleway Props., Inc. v. Andrews (In re Andrews)*, 239 F.3d 708, 710 n.7 (5th Cir. 2001)). To repeat, in its place we adopted the rule that a "'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *Id.* at 125. This rule reflects the Code's expansive treatment of claims even if, as we acknowledged, that treatment is to the "disadvantage [of] potential claimants, such as tort claimants, whose injuries were allegedly caused by the debtor but which have not yet manifested and who therefore had no reason to file claims in the bankruptcy." *Id.* at 122.

The rule is an amalgam of the two tests that other Courts of Appeals generally follow—the conduct test and the pre-petition relationship test. Under the former, a claim arises "when the acts giving rise to [the] liability were performed, not when the harm caused by those acts was manifested." *Id. See Watson v. Parker (In re Parker)*, 313 F.3d 1267 (10th Cir. 2002); *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988). Under the pre-petition relationship test, "a claim arises from a debtor's pre-petition tortious conduct where there is also some pre-petition relationship between the debtor and the claimant, such as a purchase, use, operation of, or exposure to the debtor's product." *Grossman's*, 607 F.3d at 123. *See Epstein v. Official Comm. of Unsecured Creditors (In re Piper Aircraft Corp.)*, 58 F.3d 1573, 1576 (11th Cir. 1995); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997 (2d Cir. 1991). *Cf. ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996 (9th Cir. 2006) (adopting a "fair contemplation" test, which is similar to the pre-petition relationship test). Drawing on the tests' similarities, we noted that in the typical case "there seems to be something approaching a consensus among the courts that a prerequisite for recognizing a 'claim' is that the claimant's

exposure to a product giving rise to the 'claim' occurred pre-petition, even though the injury manifested after the reorganization." *Grossman's*, 607 F.3d at 125. Consistent with that consensus, the *Grossman's* test requires that a claimant be exposed to a debtor's product or conduct pre-petition. It requires individuals to recognize that, by being exposed to a debtor's product or conduct, they might hold claims even if no damage is then evident.

As applied to the Plaintiffs, we easily conclude that Wright held a claim. She purchased shingles manufactured by Owens Corning in late 1998 or early 1999. Her exposure to Owens Corning's products predated its bankruptcy petition. We applied the test announced in *Grossman's* retroactively to the claimants in that case. *Id.*; *see also In re Rodriguez*, 629 F.3d 136 (3d Cir. 2010) (retroactively applying *Grossman's* to Chapter 13 bankruptcy proceedings begun in 2007). We thus apply the *Grossman's* test retroactively to Wright to conclude that she held a claim.

Whether West held a claim is less obvious. He purchased his shingles in 2005, after Owens Corning filed its bankruptcy petition but before the Plan was confirmed. In *Grossman's*, we were not confronted with post-petition, pre-confirmation exposure, and thus based our test on pre-petition exposure. We, however, noted that the Eleventh Circuit Court has extended the pre-petition relationship test to post-petition, pre-confirmation relationships. *Grossman's*, 607 F.3d at 124 (citing *In re Piper*, 58 F.3d at 1577). It reasoned that "changing the focal point of the relationship from the petition date to the confirmation date" would be more consistent with the policies underlying the Bankruptcy Code, including its broad definition of the term "claim" to afford debtors a fresh start. *In re Piper*, 58 F.3d at 1577–58 n.5. Indeed, the Code provides that confirmation of a plan "discharges the debtor from any debt that arose *before the*

12

*date of such confirmation*." 11 U.S.C. § 1141(d)(1)(A) (emphasis added). *See also id.* § 348(d) (providing, in the context of conversion from a Chapter 11 or Chapter 13 proceeding to a Chapter 7 proceeding, that claims other than priority claims arising after the petition date, but before conversion, are treated as pre-petition claims in the Chapter 7 proceeding); *id.* § 502(e) (providing that "a claim for reimbursement or contribution . . . that becomes fixed after the commencement of a case" is a pre-petition claim for purposes of allowance).

Not extending our test to post-petition, but pre-confirmation, exposure would unnecessarily restrict the Bankruptcy Code's expansive treatment of "claims" that we recognized in *Grossman's*. It also would separate artificially individuals who are affected by a debtor's products or conduct pre-petition from those who are affected after the debtor's filing of its bankruptcy petition but before confirmation of a plan. We thus restate the test announced in *Grossman's* to include such exposure and hold that a claim arises when an individual is exposed *pre-confirmation* to a product or other conduct giving rise to an injury that underlies a "right to payment" under the Code. As West's exposure to Owens Corning's shingles occurred pre-confirmation, he also held a claim.

## IV.    Due Process

Though the Plaintiffs held claims under the Bankruptcy Code, those claims may not have been discharged by the Plan and Confirmation Order. Discharge of the claims of future unknown claimants raises questions regarding due process.[6]    Notice is "[a]n elementary and fundamental

---

[6] Having determined that the Plaintiffs held "claims" under the Code based on *Grossman's*, the District Court first held

13

requirement of due process in any proceeding which is to be accorded finality . . . ." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Lack or inadequacy of notice of a bankruptcy prevents a claimant from having the opportunity to participate meaningfully in a bankruptcy proceeding to protect his or her claim. *See* 11 U.S.C. § 342(a) ("There shall be given such notice as is appropriate . . . of an order for relief . . . under [the Bankruptcy Code]."). Inadequate notice accordingly "precludes discharge of a claim in bankruptcy." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

As the District Court noted, we generally hold that for unknown claimants, like the Plaintiffs, notice by publication in national newspapers is sufficient to satisfy the requirements of due process, particularly if it is supplemented by notice in local papers. *Id.* at 348–49. But whether

that the claims were discharged pursuant to the Confirmation Order before considering whether the notices afforded the Plaintiffs due process, a concept rooted in fairness and applicable to bankruptcy through the Fifth Amendment of our Constitution. *See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 245 (3d Cir. 2008). However, if a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so. *See Grossman's*, 607 F.3d at 127 ("A court therefore must decide whether discharge of the . . . claims would comport with due process, which may invite inquiry into the adequacy of the notice . . . ."); *Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d Cir. 2000) ("[I]f a potential claimant lacks sufficient notice of a bankruptcy proceeding, due process considerations dictate that his or her claim cannot be discharged by a confirmation order.").

14

adequate notice has been provided depends on the circumstances of a particular case. *Grossman's*, 607 F.3d at 127. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see also SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 239 (3d Cir. 2008) ("The level of process due to a party prior to the deprivation of a property interest . . . is highly dependent on the context. As the Supreme Court has repeatedly emphasized, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" (quoting *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001)) (alteration in original)).

Though the Debtors' notices were sufficient as to most unknown claimants, the Plaintiffs' situation differed significantly from that of the typical unknown claimant. At the time the Plaintiffs received their notices, *Frenville* was the law in our Circuit (though we refrain from saying "good" law). As noted, under the *Frenville* test the Plaintiffs did not hold "claims" under the Bankruptcy Code. On reading the notices, the Plaintiffs could only understand that their rights would not be affected in any way by the referenced proceedings, and thus, correctly, would not have taken any action to ensure that their interests were represented. Not until we overturned *Frenville* and established our new test for determining when a claim exists under the Code did the Plaintiffs unexpectedly hold "claims" that arguably could be discharged in the proceedings addressed in the notices. By that time, however, the bar date had passed, the Confirmation Order had been entered, and the Confirmation Date had occurred, each of which affected the Plaintiffs' newfound claim status without an opportunity for them to be heard. Due process affords a re-do in these special situations to be

15

sure all claimants have equal rights. We thus hold that, for persons who have "claims" under the Bankruptcy Code based solely on the retroactive effect of the rule announced in *Grossman's*, those claims are not discharged when the notice given to those persons was with the understanding that they did not hold claims.[7]

---

[7] Given our reliance on the exceptional circumstances created by the retroactive application of *Grossman's*, we express no opinion on the broader issue of whether discharging unknown future claims comports with due process. *See generally* Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?*, 78 AM. BANKR. L.J. 339 (2004). In this vein and consistent with our statements that whether due process has been provided depends on the circumstances of a particular case, our holding is not a bright-line rule that all persons with unknown future claims once governed by *Frenville* could not have been provided due process regardless of the adequacy of notice to those future claimants.

For example, in some bankruptcy proceedings a future claims representative is appointed to represent and protect the interests of persons with future unknown claims. These representatives are appointed, in part, to address the broader issue of whether discharging unknown future claims comports with due process. *See, e.g.*, *id.* at 340. Indeed, future claims representatives have been appointed by courts notwithstanding their conclusion that those unknown persons did not hold "claims" under the Bankruptcy Code. *See, e.g.*, *New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 219 F.3d 478, 480–81 (5th Cir. 2000); *In re Amatex Corp.*, 755 F.2d 1034, 1043 (3d Cir.

Because we now explicitly extend the *Grossman's* test to include post-petition, pre-confirmation exposure to a debtor's conduct or product, there are two groups of persons holding "claims" based on the *Grossman's* test who, at the time they were given notice of a bankruptcy proceeding, would understand that they did not hold claims. The first group comprises those who hold claims based on *Grossman's* rejection of the *Frenville* test—that is, persons exposed to a debtor's conduct or product pre-petition. As to these persons, due process calls for the outcome of the *Frenville* test to apply for bankruptcy cases in which reorganization plans are proposed and confirmed prior to June 2, 2010, when *Grossman's* was decided. After that date, persons exposed to a debtor's conduct or product pre-petition are deemed to understand that they held claims.

In contrast, because the *Grossman's* test is limited to *pre-petition* exposure, persons exposed to a debtor's conduct

---

1985). Because a future claims representative was not appointed in these bankruptcy cases, we leave open whether, when such a representative provides persons with unknown future claims an opportunity to participate in the bankruptcy case through that representation, they are afforded due process through otherwise adequate notice to the future claims representative. *See, e.g.*, *Jones v. Chemetron Corp.*, 212 F.3d 199, 209 (3d Cir. 2000) ("[I]f a potential claimant lacks sufficient notice of a bankruptcy proceeding, due process considerations dictate that his or her claim cannot be discharged by a confirmation order. Such due process considerations are often addressed by the appointment of a representative to receive notice for and represent the interests of a group of unknown creditors." (internal citations omitted)).

or product *post-petition, but pre-confirmation*, would continue to conclude that they did not hold claims. Hence the second group is comprised of persons who hold claims based on our decision today extending the *Grossman's* test. Due process requires that the outcome of the *Frenville* test will continue to apply to their claims in bankruptcy cases where reorganization plans are proposed and confirmed prior to the date of today's decision.

\* \* \* \* \*

Because at the time of the Confirmation Date *Frenville* controlled the status of their "claims," the Plaintiffs were not afforded due process. Accordingly their claims were not discharged by the Plan and Confirmation Order, and they retained their cause of action against Owens Corning. In this context, the District Court correctly determined that the Plaintiffs held "claims" under the Bankruptcy Code. But it should not have held that those claims were discharged, and thereby granted summary judgment to Owens Corning, in the circumstances before us. We thus affirm in part and reverse in part the District Court's judgment, and remand the case to that Court for further proceedings. The shadow of *Frenville* fades, but more slowly than we would like.

18