EMILIO M. GARZA, Circuit Judge:
Mr. Williams and his children (“Williamses”) brought tort claims against Placid Oil Company (“Placid”) in connection with the allegedly asbestos-related illness and death of his wife. The bankruptcy court granted Placid’s motion for summary judgment, and the district court affirmed. Because we conclude that the *153 Williamses were unknown creditors whose pre-petition claims were discharged by Placid’s constructive notice and that Placid’s notice was not substantively deficient, we AFFIRM.
I
Placid, a Texas company, owned and operated a large natural gas production and processing facility near Black Lake, Louisiana. The company filed for bankruptcy in 1986. The bankruptcy court set January 31, 1987, as the bar date by which potential creditors were required to file claims. On three occasions in January 1987, Placid published a Notice of Bar Date in the Wall Street Journal, a newspaper of national circulation available in Louisiana. The notice informed creditors of the existence of the bankruptcy case, their opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed. On September 30, 1988, Placid confirmed its Fourth Amended Plan of Reorganization (“Plan”). The court order provided that all claims against Placid that arose on or before this confirmation date were forever discharged except for Placid’s obligations under the Plan, which did not address potential future asbestos liability.
Mr. Williams worked at the Black Lake facility from 1966 to 1995. For the purposes of this proceeding, the parties agreed that Mr. Williams was occupationally exposed to insulation containing asbestos, that Mrs. Williams was exposed to asbestos dust and fibers when laundering Mr. Williams’s clothing, and that the insulation was in Placid’s care, custody, and control prior to the sale of the facility in 1988. In 2003, Mrs. Williams’s health suddenly deteriorated. She was diagnosed with the asbestos-related lung cancer mesothelioma and passed away on August 9, 2003. In March 2004, in Louisiana state court, the Williamses brought a tort action against Placid, alleging that its negligence caused Mrs. Williams’s death and attendant damages. In November 2008, Placid filed a motion to reopen its bankruptcy case, and in September 2009, Placid filed a complaint asking the bankruptcy court to determine whether the Williamses’ claims were discharged, thereby commencing this adversary proceeding.
By the early 1980s, Placid was aware, generally, of the hazards of asbestos exposure and, specifically, of Mr. Williams’s exposure in the course of his employment. Prior to the Plan’s confirmation, no asbestos-related claims had ever been filed against Placid, and the Williamses did not file any proof of claim. After confirmation, other plaintiffs commenced asbestos-related suits against Placid, but Placid has neither been found liable in nor settled any such case. To Mr. Williams’s knowledge, none of his co-workers or their spouses has ever developed mesothelioma. Additionally, Mr. Williams testified that he was generally aware of Placid’s bankruptcy but does not recall any meetings, updates, or newspaper notices regarding the bankruptcy. To date, Placid has not been found liable in any lawsuit alleging asbestos exposure at a Placid facility, nor has it paid any money to settle such a case.
The bankruptcy court granted Placid’s motion for summary judgment and denied the Williamses’ cross-motion. The court found that the Williamses had pre-confir-mation claims and that the claims were discharged by Placid’s constructive notice. The district court affirmed. The Williamses now appeal, contending that because the method and substance of Placid’s notice were insufficient on due process grounds, their claims were not discharged.
*154 II
We review a bankruptcy court’s grant of summary judgment de novo. See In re Kinkade, 707 F.3d 546, 548 (5th Cir.2013). Summary judgment is proper when there is “no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Id. (quoting Fed.R.Civ.P. 56(a)); Fed. R. Bankr.P. 7056. To make this determination, we must view facts and inferences “in the light most favorable to the nonmoving party.” In re Kinkade, 707 F.3d at 548.
III
The Williamses first contend that the bankruptcy court erred in finding that they were “unknown” creditors for whom constructive notice of the bar date satisfied due process.[1]
Section 523(a)(3)(A) of the Bankruptcy Code provides that a creditor’s claim may be discharged upon the bankruptcy plan’s confirmation if the “creditor had notice or actual knowledge of the case in time for ... timely filing.” 11 U.S.C. § 523(a)(3)(A); see also In re Kendavis Holding Co., 249 F.3d 383, 385-86 (5th Cir.2001). Due process requires that notice be “reasonably calculated, under all the circumstances, to inform interested parties of the pendency” of a proceeding. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
The level of notice required by the Due Process Clause depends on whether a creditor is “known” or “unknown.” A debtor must provide actual notice to all “known creditors” in order to discharge their claims. City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 295-97, 73 S.Ct. 299, 97 L.Ed. 333 (1953). Known creditors include both claimants actually known to the debtor and those whose identities are “reasonably ascertainable.” Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 489-490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). A claimant is “reasonably ascertainable” if he can be discovered through “reasonably diligent efforts.” Id. at 490, 108 S.Ct. 1340 (citation omitted). “[I]n order for a claim to be reasonably ascertainable, the debtor must *155 have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable.” In re Crystal Oil, 158 F.3d 291, 297 (5th Cir.1998).[2] By contrast, the debtor need only provide “unknown creditors” with constructive notice by publication. Id. at 295, 298. Publication in a national newspaper such as the Wall Street Journal is sufficient. Id. at 295, 297-98.
The crux of this dispute is the meaning of Crystal Oil. In Crystal Oil, the Louisiana Department of Environmental Quality (“LDEQ”) brought environmental damage claims against Crystal Oil Company after its bankruptcy plan’s confirmation. Prior to the bankruptcy, a company representative had briefly corresponded with LDEQ. The LDEQ representative knew of contamination on a plot of land and, without informing Crystal Oil of the contamination or any potential environmental claim, asked only whether the company owned the land. After a faulty but good-faith title investigation, Crystal Oil replied in the negative. Id. at 293-95.
We held that although the issue was factually close, the bankruptcy court’s determination that LDEQ was an unknown creditor was not clear error. Id. at 298. We first synthesized the case law: “[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable.” Id. We reasoned that LDEQ might arguably be a known creditor since the Crystal Oil employee expressed concern that “there could be environmental problems” after speaking with the LDEQ representative. Id. at 298. Moreover, the fact that the LDEQ representative had mentioned Crystal Oil’s predecessor — the previous title holder of the land — meant that Crystal Oil had notice that LDEQ might have a claim. Id. On the other hand, LDEQ’s inquiry mentioned nothing about environmental problems, and Crystal Oil lacked concrete notice of any claim. Id. We thus concluded that the bankruptcy court’s finding that LDEQ was an unknown creditor was not clear error.
Here, we clarify this Circuit’s understanding of the rule of Crystal Oil. At one extreme, the law does not require that a creditor serve upon the debtor a formal complaint in order to make himself “reasonably ascertainable” or “known.” However, at a minimum, the debtor must possess “specific information” about a manifested injury, to make the claim more than merely foreseeable.
This understanding of Crystal Oil is informed by several authorities and by our sensitivity to the policy concerns underlying bankruptcy law. First, the Supreme Court’s opinion in Mullane, the origins of *156 due process jurisprudence in the pre-dis-charge notice context, teaches that unknown creditors are those whose “interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].” Mullane, 339 U.S. at 317, 70 S.Ct. 652. The Court specifically declined to impose upon the debtor “ordinary standards of diligence,” given countervailing concerns for efficiency.[3] Id. Thus, the Court recognized a temporal distinction; “conjectural” claims of a creditor that arise too far in the future cannot make that creditor “known.” Id.; see also In re Hunt, 146 B.R. 178, 182 (Bankr.N.D.Tex.1992) (“Unknown creditors include those whose identities or claims are not reasonably ascertainable and those who have merely conceivable, conjectural, or speculative claims.” (emphasis added)).
The decisions of other courts of appeals also establish that the claim of a known creditor must be based on an actualized injury, as opposed to merely foreseeable. The Third Circuit’s Chemetron decision, which we cited favorably in Crystal Oil, held that known claimants must be “reasonably ascertainable, not reasonably foreseeable.” Chemetron Corp. v. Jones, 72 F.3d 341, 348 (3d Cir.1995). In Cheme-tron, the claims at issue were filed by residents of and occasional visitors to an area contaminated by radioactive waste. Id. at 344-45. The court explained that a foreseeability test conflicted with other authorities and would “place an impossible burden on debtors,” given the difficulty of defining the affected geography and individuals. Id. at 347-48; see also COLLIER ON BANKRUPTCY ¶ 342.02 (6th ed.2013) (quoting Chemetron definition of unknown creditors).
Two appeals court opinions are particularly persuasive because they apply Crystal Oil. Those courts concluded that creditors were “known” because the debtor knew of specific complaints or injuries. The First Circuit in In re Arch Wireless, Inc., 534 F.3d 76 (1st Cir.2008), concluding that the bankruptcy court did not clearly err in finding a creditor to be “known,” cited emails sent by the creditor to the debtor prior to the bankruptcy. The emails alleged that the debtor’s faulty products had caused substantial losses and “could reasonably be understood to assert an entitlement to affirmative compensation.” Id. at 81-82. Similarly, the Fourth Circuit in In re J.A. Jones, Inc., 492 F.3d 242 (4th Cir.2007), explained that an employee of the debtor was fully aware of a fatal and widely publicized accident in a construction zone for which the debtor served as the general contractor. Accordingly, the bankruptcy court did not clearly err in finding that the estate of an accident victim was a known creditor, even though no pre-petition claims had been filed. Id. at 251-52 & n. 9. Thus, to conclude that a creditor is known, a court must determine that, at a minimum, a debtor has “specific information” related to an actual injury suffered by the creditor. In re Crystal Oil, 158 F.3d at 297.[4] Information, howev *157 er specific, that makes a claim only foreseeable or conjectural is insufficient.[5]
Furthermore, policy concerns specific to bankruptcy weigh heavily against defining known creditors as those with merely foreseeable claims. Bankruptcy offers the struggling debtor a clean start. In the interests of facilitating this recovery and balancing due process considerations, the courts have established a practical limit to the debtor’s duty to notify creditors: Actual notice is required only for “known” creditors. We decline today to alter this limit.
Applying the above principles, we hold that the bankruptcy court did not err in finding that the Williamses were unknown creditors under the undisputed facts presented here. Although Placid knew of the dangers of asbestos and Mr. Williams’s exposure, such information suggesting only a risk to the Williamses does not make the Williamses known creditors. Here, Placid had no specific knowledge of any actual injury to the Williamses prior to its bankruptcy plan’s confirmation. Cf. City of New York, 344 U.S. at 296, 73 S.Ct. 299 (concluding that holder of known liens was entitled to actual notice). Furthermore, no instances of asbestos-related injury or illness were known to Placid prior to confirmation. In re J.A. Jones, Inc., 492 F.3d at 251-52 (accident-caused injuries known to debtor). Press clippings about widely-known, but general, risks of asbestos exposure do not establish that Placid knew of any specific injury to its employees or any asbestos-related claim.[6]
The Williamses invoke a series of policy arguments that are either inapplicable or unpersuasive. They first contend that delivering actual notice to Mr. Williams “would have been simple.” The proper threshold inquiry, however, is not the cost of providing actual notice, which is inevitably negligible when contemplating only an individual creditor. Rather, the bankruptcy court must assess the reasonableness of ascertaining known creditors. As for this threshold question, the Williamses fail to explain how Placid should have reasonably ascertained that some of its hundreds of employees (not to mention former employees) had actual asbestos-related injuries. Next, the Williamses submit that because Placid had superior knowledge of asbestos-related risks, it must bear the consequences of its choice to provide constructive notice where it had “no contemplation of future claims.” But this theory misses the bankruptcy overlay: If a debt- or has “no contemplation” of a creditor’s pre-petition claim, then that creditor is by definition unknown, and constructive notice discharges the claim upon confirmation. Finally, the Williamses emphasize the unique situation presented by the latency of asbestos-related illness. We are not unsympathetic to fairness concerns, but on the record and briefing before us, we again conclude that bankruptcy norms *158 must trump: Parties with merely foreseeable claims are not “known” creditors.[7]
IV
The Williamses further contend that even if they were unknown creditors, Placid’s general notices of the bar date, published in the Wall Street Journal and not mentioning potential asbestos claims, were substantively insufficient for due process purposes.
We have never required bar date notices to contain information about specific potential claims. To the contrary, we have determined that publication in the national edition of the Wall Street Journal discharges the pre-confirmation claims of unknown creditors. In re Crystal Oil, 158 F.3d at 295, 297-98. Furthermore, neither the Bankruptcy Code nor Rules require bar date notices to apprise creditors of potential claims. See Fed. R. Bankr.P. 2002(f) (requiring only that notice state “time allowed for filing claims”).
We hold that because a bar date notice need not inform unknown claimants of the nature of their potential claims, Placid’s notices were substantively sufficient to satisfy due process. Placid’s notice informed claimants of the existence of the bankruptcy case, the opportunity to file proofs of claim, relevant deadlines, consequences of not filing a proof of claim, and how proofs of claim should be filed.[8] We decline to articulate a new rule that would require more specific notice for unknown, potential asbestos claimants.[9]
*159 V
For the foregoing reasons, we AFFIRM.

. Because the Williamses do not contest on appeal the bankruptcy court’s finding that they possessed pre-confirmation claims subject to discharge, this issue is waived. Procter & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 n. 1 (5th Cir.2004). The dissent recognizes this omission as well. Post at 159-60. We note, however, that Wright v. Owens Coming, 679 F.3d 101 (3d Cir.2012), raises doubts as to whether the Williamses actually had dischargeable claims. In that case, the Third Circuit held that for due process purposes, the existence of a pre-confirmation claim is governed by the law at the time of notice, and not by retroactive application of current law. Id. at 108. Here, Placid provided constructive notice to its unknown creditors in 1987. In finding that the Williamses had pre-petition claims, the bankruptcy court relied on our 1994 decision in Lemelle v. Universal Manufacturing Corporation (In re Lemelle), 18 F.3d 1268 (5th Cir.1994). Even if we assume that the district court correctly read Lemelle to establish that the pre-petition relationship test governs the existence of asbestos claims, that case post-dated Placid’s bankruptcy. But because this issue has not been squarely presented, we do not opine on it today and proceed from the premise that the Williamses had pre-confirmation claims. The dissent begins from the opposite premise — that the Williams had no dischargeable pre-confirmation claims — by rendering Lemelle inapplicable to latent disease-related claims. Post at 159. Assisted by proper briefing, a future panel may well opt to narrow Lemelle in this way, but we observe today that the dissent’s "context-specific approach,” id. at 164, would effectively require firms across innumerable industries to appoint a future-claims representative and reserve assets of the estate pro forma, in order to definitively resolve any “unknown, future latent-disease claims” at bankruptcy, id. at 162.

. We reject the Williamses’ interpretation at oral argument of the Third Circuit case In re Grossman's. The Williamses asserted that under Grossman’s, sufficiency of notice hinges on whether claimants were aware of their vulnerability to asbestos or on a "reasonableness” standard. Regarding the first test, awareness of vulnerability was only one of many factors that the court in dicta recommended that the lower court consider in its discharge analysis. Another factor was "whether the claimants were known or unknown creditors.” Jeld-Wen, Inc. v. Van Brunt (In re Grossman’s Inc.), 607 F.3d 114, 127 (3d Cir.2010). In any case, Mr. Williams was aware of his vulnerability: He knew that he was exposed to asbestos in his work, and the dangers of asbestos were widely known at the time, as even the Williamses contend. As for “reasonableness” of notice, the Third Circuit articulated no such amorphous standard; rather, the overall test is whether the notice comported with due process. Id. at 125, 127.

. Although Mullane defined unknown creditors in the context of judicial settlement of accounts by the trustee of a common trust fund, in Tulsa Professional Collection Services, the Supreme Court applied the Mullane definition to the analogous context of claims discharge in bankruptcy. Tulsa Prof'l Collection Servs., 485 U.S. at 490, 108 S.Ct. 1340.

. To use the words of Mullane invoked by the dissent, post at 164-65 n. 5, individuals who lack any actual injury have only "interests [that] are either conjectural or future,” Mullane, 339 U.S. at 317, 70 S.Ct. 652, and cannot be deemed "interested parties" or "known present beneficiaries” requiring actual notice, id. at 318, 70 S.Ct. 652.

. In Chemetron, the Third Circuit also recognized that a creditor could become “known” without actually entering its claim into the “books and records” of the debtor, but that the facts of that case did not present the opportunity to address the issue. Chemetron, 72 F.3d at 347 n. 2 ("Situations may arise when creditors are 'reasonably ascertainable,’ although not identifiable through the debtor's books and records.”). In this case, we shed additional light on the space between mere foreseeability and books-and-records knowledge by requiring that the debtor possess information regarding a creditor's actual injury, in order for that creditor to be known.

. The Williamses also submit that a periodical article about risks to family members of asbestos factory workers demonstrates that Placid was aware of Mrs. Williams’s potential claim. However, Mr. Williams did not work in an asbestos factory, and the Williamses have not shown that Placid was aware of the level of Mrs. Williams's exposure.

. We again note the Williamses's failure to appeal the bankruptcy court’s finding that they had dischargeable pre-confirmation claims. See supra n. 1. Furthermore, as the bankruptcy court observed, Congress can enact a solution, as it has indeed begun to do in the asbestos injury context. But we reject the Williamses’ policy-driven reliance on Congress's amendment to the Bankruptcy Code. As the bankruptcy court correctly explained, the Code provisions providing special protection to asbestos victims would not have applied to Placid's bankruptcy since Placid had never been subjected to asbestos claims. See 11 U.S.C. § 524(g). We opt not to extend the statute beyond its scope.

. Furthermore, in Shelton Property Rural Acreage, L.L.C. v. Placid Oil Co. (In re Placid Oil Co.), 450 Fed.Appx. 323 (5th Cir.2011) (unpublished), we found that the same notice in the same bankruptcy case was sufficient to discharge environmental damage claims brought by an unknown creditor. Id. at 326 (“[Njotice by publication in the Wall Street Journal is sufficient for unknown creditors.”).

. The Williamses’ reading of the case law is unpersuasive. In DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 871 F.Supp.2d 143 (E.D.N.Y.2012), a debtor allegedly fraudulently concealed an antitrust conspiracy from a creditor. Confronted with these unique facts, the district court held that notice of specific claims is required prior to discharge “where a debtor is aware of certain claims against it due to information uniquely within its purview.” Id. at 159. Another case cited by the Williamses deals with known, not unknown, claimants. See Acevedo v. Van Dorn Plastic Mach. Co., 68 B.R. 495, 499 (Bankr.E.D.N.Y. 1986) (reasoning that because employer knew of employee’s machine-related injury before its bankruptcy, its failure to notify machine’s manufacturer about the injury would make manufacturer’s post-confirmation claim non-dischargeable). Amchem Products v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), suggests that inadequate notice might raise due process concerns in the class action context, but the Court’s observations were dicta. See post at 160-61. Similarly, other discussion in In re Hexcel Corporation invoked by the Williamses lay beyond that court’s holding; that case concerned the distinct question of when and whether a pre-confirmation claim arose. See In re Hexcel Corp., 239 B.R. 564, 570-72 (N.D.Cal.1999). Finally, the Williamses’ contention that "sufficiency of notice is determined on a creditor-by-creditor basis” takes the Supreme Court's words in Tulsa Professional Collection Services out of context. In that case, the Court explained that actual notice is required for known creditors, whereas constructive notice is sufficient for unknown creditors. Tulsa Prof'l Collection Servs., 485 U.S. at 484, 108 *159 S.Ct. 1340. We have already explored this principle and need not revisit it.