**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2066

_____

JOHN M. SWEENEY; REGINA SWEENEY,
Appellants

v.

ALCON LABORATORIES; EASTMAN KODAK CO.;
ABC CORPORATION 1–10, a series of fictitious corporations;
JOHN DOES 1–5, a series of fictitious names

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:16-cv-04860)
District Judge:  Honorable Esther Salas

_____

Argued: March 24, 2021

Before:  HARDIMAN, GREENAWAY, JR., and BIBAS,
*Circuit Judges*
(Filed: April 20, 2021)

_____

Gary M. Meyers, I **[ARGUED]**
35 West Main Street
Suite 106
Denville, NJ 07834
        *Counsel for Appellants*

Eric J. Ward          **[ARGUED]**
Jeffrey J. Harradine
Ward Greenberg Heller & Reidy
1800 Bausch & Lomb Place
Legacy Tower
Rochester, NY 14604

Amy L. Hansell
Daniel M. Young
Ward Greenberg Heller & Reidy
701 East Gate Drive
Suite 220
Mount Laurel, NJ 08054
             *Counsel for Appellee*

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge.*

The discharge of claims in bankruptcy applies with no less force to claims that are meritorious, sympathetic, or diligently pursued. Though the result may chafe one's innate sense of fairness, not all unfairness represents a violation of due process.

John Sweeney's symptoms first manifested in 2009. In 2014, he was diagnosed with adhesive arachnoiditis. It was not until 2015 that he identified a likely source of his injuries: his 1975 exposure to a product called Pantopaque, whose harmful ingredient (iophendylate) Kodak allegedly had manufactured.

By the time Mr. Sweeney ascertained this alleged causal connection, Kodak had undergone reorganization pursuant to chapter 11 of the Bankruptcy Code. As part of this

_____

[*]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

process, prepetition claims against Kodak (such as those brought by Mr. Sweeney and Regina Sweeney, his wife) had been discharged.

The Sweeneys assert that the discharge of their claims was not effective because Kodak had not complied with the dictates of due process. They argue that Kodak's notice of the deadline for filing proofs of claim (the "claims bar date") should have included language announcing that persons injured as a result of Pantopaque exposure might have claims against Kodak. However, based on the facts pleaded in the Fifth Amended Complaint, requiring such language here would work a dramatic expansion of a bankruptcy debtor's onus with respect to providing notice to unknown creditors.

The District Court correctly found that Kodak provided sufficient notice to satisfy due process. We will affirm.[1]

## I.     Background[2]

In 1975, fifteen-year-old Mr. Sweeney sustained significant injuries while playing football. During his treatment, physicians injected Pantopaque, a medical-imaging dye product, into his spinal canal. Kodak manufactured iophendylate, a chemical component of Pantopaque.

Articles in medical journals had warned as early as 1945 that dyes used in Pantopaque were linked to a severely debilitating condition known as adhesive

---

[1]    The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291(3).

[2]    Because the District Court dismissed the Sweeneys' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept the facts pleaded in the Fifth Amended Complaint as true. We consider only the facts pleaded in the operative complaint or amenable to judicial notice. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

3

arachnoiditis, and in 1969 the FDA requested that Pantopaque's distributor add specific cautionary language to that effect to its products. Yet the warning label used on Pantopaque in 1975 did not include such language and instead minimized the product's risks (though it did contain the phrase "severe arachnoiditis").

As of September 1976, Mr. Sweeney enjoyed a full recovery from his football injuries, but beginning in 2009, he began to experience increasing lower extremity weakness, numbness, clumsiness, and difficulty walking, resulting in increased falls. By 2013, he had been forced to relocate his bed to the lower floor of his home. He submitted to medical testing beginning in 2009 and was diagnosed with advanced adhesive arachnoiditis in August 2014. This prompted him to search for the cause of his arachnoiditis, and an internet search revealed a possible causal link to his exposure to Pantopaque decades earlier. In late 2015, by which time Mr. Sweeney had been diagnosed with end-stage adhesive arachnoiditis, a neurosurgeon confirmed that his exposure to Pantopaque had likely caused his progressive loss of lower extremity function.

In 2012, before Mr. Sweeney had received a diagnosis, Kodak filed a voluntary petition with the Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") under chapter 11 of Title 11 of the United States Code. Pursuant to the Bankruptcy Court's directives, Kodak first published notice of the deadline for filing proofs of claim in the National Edition of *The New York Times* and in the *Democrat and Chronicle* in Kodak's home base of Rochester, New York. It later published notice of the

4

confirmation hearing in *USA Today*; *The Wall Street Journal*, National Edition; and the *Democrat and Chronicle*.

On August 23, 2013, the Bankruptcy Court confirmed Kodak's plan of reorganization (the "Bankruptcy Plan"). The Bankruptcy Plan discharged and terminated all claims against Kodak, known or unknown, and enjoined the commencement or prosecution of any claims or causes of action so discharged. The Bankruptcy Court's Confirmation Order contained a similar injunction.

The Sweeneys commenced this personal injury lawsuit against Kodak and its co-defendants (which are not party to this appeal) in 2016. In 2018, Kodak moved to dismiss the claims against it pursuant to Sections 524 and 1141(d)(1) of the Bankruptcy Code; the Bankruptcy Court's August 23, 2013 order confirming Kodak's Bankruptcy Plan; and "the [District] Court's inherent judicial powers." App. 34a. The District Court treated the motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The District Court granted the motion to dismiss the claims against Kodak, holding that "under either Second or Third Circuit law, Plaintiffs['] claims must be dismissed because, for unknown creditors, notice by publication was sufficient to satisfy due process." *Sweeney v. Lafayette Pharm., Inc.*, 2020 WL 2079283, at *2 (D.N.J. Apr. 30, 2020). The District Court found that the factors set forth by this Court in dicta in *Jeld-Wen, Inc. v. Van Brunt* (*In re Grossman's Inc.*), 607 F.3d 114, 127–28 (3d Cir. 2010) (en banc), bolstered the case for discharge. In assessing these factors, it noted that facts pertaining to other Pantopaque-related lawsuits were "not properly before the Court

5

at the motion to dismiss stage"; while it "acknowledge[d] that discovery could allow it to do a more fulsome analysis," it found that the record was sufficient for it to decide the issue. *Sweeney*, 2020 WL 2079283, at \*5 n.6.

## II.   Discussion[3]

Section 1141(d)(1)(A) of the Bankruptcy Code provides that the confirmation of a reorganization plan "discharges the debtor from any debt that arose before the date of such confirmation," notwithstanding whether "the holder of such claim has accepted the plan."  11 U.S.C. § 1141(d)(1)(A).  Pursuant to 11 U.S.C. § 524(a)(2), a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  These provisions were echoed in the Plan and Confirmation Order at issue here.

Because the parties agreed that Appellants' claims against Kodak were prepetition claims, due process is the dispositive issue; the Bankruptcy Court's Confirmation Order would have operated to discharge the Sweeneys' claims unless the notice of the claims bar date and bankruptcy confirmation hearing provided by Kodak failed to afford the Sweeneys due process.  *Sweeney*, 2020 WL 2079283, at \*2; *see In re Grossman's Inc.*, 607 F.3d at 125–26 (claims otherwise subject to discharge are not discharged where "fundamental principles of due process" have not been satisfied).

---

[3]   We exercise plenary review of the District Court's grant of the motion to dismiss. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

Appellants concede that the *manner* of notice—publication in papers of national circulation and one local periodical—was constitutionally sufficient. Yet they argue that due process was not satisfied because the *content* of the notice omitted critical information. While the case law in this area tends to focus on the manner of notice, generally content is a critical component of due process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("The notice must be of such nature as reasonably to convey *the required information*."[4] (emphasis added)).

With respect to manner and content both, reasonableness is the touchstone of the due process analysis. Thus, the Supreme Court has endorsed "resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning," as "in the case of persons missing or unknown."[5] *Id.* at 317. In the same vein, persons who cannot be identified or located without travail may be deemed "missing or unknown": "impracticable and extended searches are not required in the name of due process." *Id.* at 317–18.

In this Circuit, reasonable diligence on the part of a debtor requires a "search . . . focuse[d] on the debtor's own books and records," and a "careful examination of [those] documents." *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir.

---

[4]     The Court also observed that notice by publication is especially unlikely to be effectual where it "does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." *Mullane*, 339 U.S. at 315.
[5]     In *Mullane*, the claims were unknown to the *debtor*. We have suggested that publication notice might not be enough if the claims were unknown even to the *creditor herself* during the bankruptcy. *See Wright v. Owens Corning*, 679 F.3d 101, 108 n.7 (3d Cir. 2012). But the Sweeneys do not make this argument.

7

1995). A debtor need not conduct a "vast, open-ended investigation," nor must it "search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Id.* at 346 (quoting *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991)). In *Chemetron*, we held that because the claimants were "'unknown' creditors," "notice by publication was sufficient to satisfy the requirements of due process," and their claims were barred. *Id.* at 345–46. We have since reiterated that "claimants who were unknown at the time of the discharge" are "entitled only to publication notice of a property deprivation." *In re Energy Future Holdings Corp*, 949 F.3d 806, 822 (3d Cir. 2020).

There is no bright-line rule that the publication of purported notice, irrespective of its content, will discharge all prepetition claims held by unknown persons. Rather, as we stated in *Grossman's*, "[w]hether a particular claim has been discharged by a plan of reorganization depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court."[6] 607 F.3d at 127. It may be that if a debtor's records revealed the existence—but not the identities—of persons with claims against the debtor, due process would require that the nature of those claims be announced in the relevant notices.[7] We need not decide as much today, however,

---

[6] In *Grossman's*, we enumerated a non-exhaustive set of factors that district courts "may wish to consider." 607 F.3d at 127–28. Appellants assert the District Court applied these factors incorrectly, but this argument presumes that our list was prescriptive. It was not; the considerations were offered only in dicta, and the Court's diction ("may wish to consider" and "inter alia") underscores that we did not intend to impose a rigid test. *Id.* at 127.

[7] Such circumstances might also warrant the creation of a trust and/or the appointment of a future claims representative. We do not address the propriety of such measures in this case, as Appellants have forfeited any argument that they ought to have been implemented.

because the Fifth Amended Complaint does not allege that Kodak had actual or constructive knowledge of Pantopaque claimholders as of 2012.

Even when viewed in the light most favorable to Appellants, the Fifth Amended Complaint does not support the inference that Kodak, through reasonably diligent efforts, should have ascertained the existence of Pantopaque claims against it. In their briefs, Appellants point to a series of Pantopaque-related lawsuits filed in the late 1980s and the 1990s, urging that these suits demonstrate Kodak's knowledge of its liability. We may take judicial notice of "another court's opinion to use it as proof that evidence existed to put a party on notice of the facts underlying a claim." *Sands*, 502 F.3d at 268. However, none of the opinions Appellants cite speaks to the contents of Kodak's books and records in 2012.[8] *See Dohra v. Alcon (P.R.), Inc.*, 1994 WL 71449 (N.D. Ill. March 3, 1994); *Staub v. Eastman Kodak Co.*, 726 A.2d 955 (N.J. Super. Ct. App. Div. 1999); *Ahearn v. Lafayette Pharmacal, Inc.*, 729 S.W.2d 501 (Mo. Ct. App. 1987). Nor is the mere existence of the cases sufficient to put Kodak on notice. The search a bankruptcy debtor must undertake is not "open-ended," but rather "focuses on the debtor's own books and records." *Chemetron*, 72 F.3d at 346–47.

There is no allegation that previous Pantopaque suits appeared in Kodak's books and records more than a decade after those actions were resolved. In the absence of allegations tending to show that Kodak's records in 2012 disclosed outstanding

---

[8]      In addition to the opinions directly cited, Appellants seek to rely on a chart submitted in support of Kodak's motion to dismiss. This chart (which is not properly before the Court at this posture) does not contain citations to court opinions.

Pantopaque claims, we must conclude that the notice provided here was constitutionally sufficient.[9] To hold otherwise would dramatically expand the burdens borne by debtors. *See Chemetron*, 72 F.3d at 346–47.

### III. Conclusion

The published notice satisfied the standards of due process here. We will affirm the decision of the District Court.[10]

---

[9] Judge Bibas would affirm because the Sweeneys' only objection to the notice is that it did not mention Kodak's connection to Pantopaque. That detail could not have helped Mr. Sweeney or anyone like him. Once a creditor learns he has been injured by Pantopaque, it would be easy for him to find out that Kodak made the active ingredient. Sweeney himself made the connection instantly. The creditor's problem is that he might not yet be injured by the time of the bankruptcy. Mentioning Kodak's connection to the drug would not solve that problem. So the detail was not required by due process.

[10] Because we will affirm the District Court's ruling, we do not reach the question whether the Bankruptcy Court for the Southern District of New York would have had jurisdiction concurrent with that of the District of New Jersey in this matter.