

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>BEN NYE CO., INC.,<br>　　　　　　Debtor. | BAP Nos. CC-24-1161-SGF<br>CC-24-1162-SGF<br><br>Bk. No. 2:24-bk-11857-DS |
| THE GORI LAW FIRM on behalf of Humberto Machado and Humberto Machado, Jr., 2023-LA-1307 in the Third Judicial District (Illinois); Jami Sager and Douglas Sager, 2422-CC00137, Missouri; and Russell Kolber, 21 L 1564 in the Third Judicial District (Illinois); MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC on behalf of Claudia Smith, 22 STCV 18719 in the Los Angeles Superior Court; and Robbin Watts as Personal Representative for Joseph Sniegocki, 23-010939, Broward County, Florida; SIMON GREENSTONE PANATIER, PC on behalf of Gary Schmidt and James Schmidt, 62 CV 22 4900 in the Ramsey County, Minnesota District Court; WATERS KRAUS PAUL & SIEGEL on behalf of Stacy Belanger and Peter Belanger, 22 STCV 08775 in the Los Angeles Superior Court; WEITZ & | **MEMORANDUM**[*] |

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

LUXENBERG P.C. on behalf of Michele Rusinko and Robert Weisenfeld, MID-L-6742-23 AS, Middlesex County, New Jersey,

Appellants,

v.

BEN NYE CO., INC.; GREGORY KENT JONES, Sub-Chapter-V Trustee,

Appellees.

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

**INTRODUCTION**

Appellants are a group of five asbestos personal injury law firms and eight asbestos personal injury plaintiffs (collectively, "Appellants") with lawsuits pending against subchapter V[1] debtor Ben Nye Co., Inc. ("Debtor"), a small, family-owned business subject to mounting asbestos claims. Appellants have alleged that some of Debtor's products contain talc contaminated by asbestos, and the plaintiffs' exposure to these products resulted in them contracting asbestos-related illnesses. Debtor denies its products contain asbestos, but its litigation costs continued to increase. It

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

filed bankruptcy to address all asbestos claims.

Appellants challenge the bankruptcy court's order setting a bar date and its order confirming Debtor's plan of reorganization. As to the bar date order, Appellants contend that the order impermissibly required all asbestos litigants—current and future—to file a proof of claim regardless of whether the litigants then held "claims" against Debtor within the meaning of the Bankruptcy Code. We agree that the bar date order improperly included a discharge-like injunction. Appellants' remaining arguments attacking the bar date order—which focus on who holds claims—are premature.

Appellants' arguments challenging plan confirmation as denying due process and barring future claimants are unavailing. The confirmation order did not determine who holds claims. Nor did Debtor's plan purport to make this determination. The discharge injunction in the plan applies only to those who held claims or causes of action as of the plan's effective date. But the plan did not attempt to identify who holds these claims. This question remains to be adjudicated through the claims allowance process or through enforcement of the discharge injunction. Therefore, we do not address Appellants' plan confirmation arguments for the same reason we decline to address most of Appellants' arguments concerning the bar date order: they are premature.

The inclusion of an injunction within the bar date order was error. The attempt to establish who held claims against Debtor as part of the bar

date order was similarly erroneous. Given the limited nature of the error, we ORDER CORRECTED the bar date order to delete the injunction contained in Paragraph 9 and to revise Paragraph 8 consistent with this decision to clarify that the bar date order did not decide whether all future asbestos claimants were subject to the bar order and the discharge injunction. As corrected, the bar date order is AFFIRMED. Also, the confirmation order is AFFIRMED.

## FACTS[2]

Appellants have not challenged on appeal any of the bankruptcy court's findings of fact. Indeed, Appellants did little or nothing during the plan confirmation process to counter Debtor's evidence. Accordingly, our recitation of facts draws heavily from the bankruptcy court's findings and the declarations Debtor submitted in support of its plan.

Debtor manufactures and sells makeup primarily for theatrical and costume purposes. It has been family owned and operated since its founding in 1966. At the time of its bankruptcy filing, ownership of the company was held by Dana and Gina Nye as trustees for a family trust. Dana serves as Debtor's president and chief executive officer, and Gina has served as its chief financial officer.

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

## A. Prepetition asbestos lawsuits.

In December 2004, Debtor was named for the first time as a defendant in a personal injury lawsuit allegedly arising from the use of its products. The plaintiff alleged that she had suffered injury after using Debtor's face powder, which allegedly contained asbestos. In response, Debtor conducted "intensive research" but found no evidence of asbestos in its products. Debtor did not have insurance for this type of claim and spent about $50,000 in defense costs on this first personal injury action. The case was dismissed in 2005 without settlement.

Seventeen years later, and while still weathering the economic impact of the COVID-19 pandemic, Debtor was sued a second time. Again, the plaintiff alleged exposure to asbestos from Debtor's face powder. In this second lawsuit, Debtor was among 60 defendants and vigorously defended its position, spending nearly $500,000 in legal fees. It also paid $37,500 to settle this case.

Between July 2021 and March 2024, Debtor was named as a defendant in eight more asbestos lawsuits. In these lawsuits, Debtor was named with multiple other defendants, including many large and well-known companies.

Debtor has consistently denied that it has manufactured any products containing asbestos or causing illness. Nor has anyone ever presented any evidence to the contrary. But asbestos lawsuits are expensive to defend, and the Debtor had no insurance to fund its defense. Debtor's legal

5

expenses steadily rose—from $62,513 in 2021, to $301,945 in 2022, and then to $407,289 in 2023. Debtor could not continue to sustain legal expenses in these amounts. When combined with decreases in revenue that Debtor simultaneously experienced, it sustained a net loss of $453,102 for the year ending December 31, 2023. In turn, these circumstances "substantially depleted" Debtor's cash position.

**B.    Debtor's bankruptcy and the Bar Date Motion.**

Debtor filed its subchapter V bankruptcy in March 2024, after realizing that continuing to defend the ongoing asbestos lawsuits would result in overwhelming legal expenses. Debtor was concerned that the continuing litigation would require it to permanently shutter its business, liquidate its assets, and terminate its employees. Nor would Debtor be able to repay its creditors, regardless of the merits of their claims, if forced to close and liquidate.

Within several days of filing bankruptcy, Debtor moved to set special notice procedures and a special bar date for filing "known and unknown" asbestos personal injury claims ("Bar Date Motion"). Debtor asked the bankruptcy court to set a bar date for filing all asbestos proofs of claim regardless of whether the parties exposed to Ben Nye products had manifested any asbestos-related illnesses. The principal purpose of the Bar Date Motion was to fix the time for filing proofs of claim in the bankruptcy as contemplated in Rule 3003(c)(2) and (3).

As Debtor noted, absent leave to file a belated claim, a failure to

timely file a claim pursuant to Rule 3003(c)(2) and (3) typically means that such creditor "will not be treated as a creditor for that claim for voting and distribution." Rule 3003(c)(2). However, Debtor's request for relief went significantly further. In the Bar Date Motion, Debtor requested broad injunctive relief against any "Asserted Asbestos Claim." The Bar Date Motion broadly defined this term as covering all "asserted asbestos related injury claims," regardless of whether the claimant had manifested any illness from being exposed prepetition to Debtor's products. As Debtor explained, "the claims of future claimants must be addressed as asbestos related injuries arise many years after exposure to the asbestos containing product." Though it acknowledged that § 524(g) typically provides the means to bind future asbestos litigants by means of a channeling injunction, Debtor conceded that it lacked the insurance or assets necessary to utilize that statute.[3] Nonetheless, it maintained that it could bind future

---

[3] *Fireman's Fund Insurance Co. v. Plant Insulation Co. (In re Plant Insulation Co.)*, 734 F.3d 900, 905-06 (9th Cir. 2013), generally described the nature and function of plans proposed pursuant to § 524(g):

> Under § 524(g), a court-appointed fiduciary stands in for the future asbestos claimants, and the court ensures that any proposed plan is fair to them. This is necessary because, under a § 524(g) plan, the bankruptcy court enters a series of "channeling injunctions" that can put an end to all present and future asbestos litigation by preventing any entity from taking legal action to collect a claim or demand that is to be paid in whole or in part by a trust created through a qualifying plan of reorganization. In the typical § 524(g) plan, . . . [t]he trust is established by the plan and is generally funded by insurance proceeds and securities in the reorganized debtor. In theory, by funding the trust with securities of the reorganized

asbestos litigants through a "robust claims bar date notice process that includes publication notice." To do so, the Bar Date Motion sought an order stating that:

> any holder of a [sic] an Asserted Asbestos Claim against the Debtor that is required to file a proof of claim in accordance with an entered order of the Court granting this Motion, but fails to do so on or before the Asserted Asbestos Claim Bar Date, **shall (a) be forever barred, estopped, and enjoined from asserting such a claim against the Debtor, their property, or their estates** (or submitting a proof of claim with respect thereto) and (b) not be treated as a creditor with respect to such claim for the purposes of voting and distribution with respect to any chapter 11 plan of reorganization that may be filed in this bankruptcy case.

Bar Date Motion at 10:17-21 (emphasis added).

Debtor's proposed bar date notice mirrored the breadth of injunctive relief sought in the Bar Date Motion. As set forth in the bar date notice:

> If you do not submit a claim by the Asbestos Claim Bar Date and later manifest asbestos-related disease, **you will not be eligible for compensation from the Company.** Even if you have not been diagnosed with disease or experiences [sic] symptoms, **you must make a claim to preserve your right to compensation** if you develop an asbestos-related illness in the future.

(Emphases added.) The bar date notice emphasized that: "Failure to file a claim by the Asbestos Claim Bar Date will result in any existing or future

---

debtor, the trust has an "evergreen" source of value for future asbestos claimants. There are a number of special requirements a plan must meet for a debtor to obtain § 524(g) injunctive relief.

*Id.* (cleaned up).

8

**claim against the Company** arising from asbestos exposure being barred." (Emphasis added.) The bar date notice defined "the Company" as Ben Nye, Co. Inc. By declaring non-filing asbestos litigants ineligible to pursue compensation from "the Company," as opposed to "the bankruptcy estate," the bar date notice confirmed that Debtor was seeking not merely to bar all asbestos litigants who failed to timely file claims from participating in the bankruptcy but also to preclude them from attempting to collect from Debtor at any time or in any manner in the future.

Appellants opposed the Bar Date Motion but did not directly challenge the broad injunctive relief sought. Instead, they pointed out that Debtor sought to apply the bar date to anyone previously exposed to Debtor's products, including those who had not yet manifested any illness. Appellants argued this was unfair and legally improper for two reasons. First, they contended that these future or latent asbestos personal injury litigants did not hold "claims" within the meaning of the Bankruptcy Code under the Ninth Circuit's fair contemplation test adopted by *California Department of Health Services v. Jensen (In re Jensen)*, 995 F.2d 925 (9th Cir. 1993). Absent a claim, they argued, those persons whose claims were not within their fair contemplation at the time of the bankruptcy filing were not subject to the bankruptcy claims process or any bar date. Appellants maintained that the only way Debtor properly could "bind" or "discharge" the future asbestos litigants was by complying with the statutory provisions of § 524(g).

Second, Appellants claimed that broadly imposing the notice procedures and a claims bar date violated the constitutional due process rights of future asbestos litigants. Appellants contended that it was unreasonable to expect future litigants to "make an informed decision" about whether they had a claim against Debtor for an asbestos personal injury that had not yet manifested. Appellants pointed out that asbestos personal injuries typically took decades to manifest themselves. According to Appellants: "[n]o amount of notice today can bind claims that will arise in the future. . . . Because the Debtor's bar date scheme has no hope of fulfilling its stated goals of discharging future claims, it will serve no legitimate reorganizational purpose."

In its reply, Debtor asserted that Appellants lacked standing to represent the interests of future litigants and should not be permitted to object to the Bar Date Motion on their behalf. Debtor further noted that, absent a successful reorganization, there was no way for it to survive while continuing to incur the legal defense costs associated with Appellants' ongoing personal injury actions. Debtor also pointed out that § 524(g) was not a practicable option given the Debtor's size and finances. Moreover, the relatively small number of prior asbestos personal injury actions limited its ability to forecast its future exposure for such claims. Debtor insisted that its proposed bar date notice would enable all future asbestos litigants to

"reasonably contemplate the existence" of their asbestos injury claims.[4]

Finally, Debtor detailed and corroborated with exhibits the third-party

testing it had procured reflecting that it had found no asbestos in its

products containing talc.

At the hearing on the Bar Date Motion, the bankruptcy court declined

to dispose of Appellants' objections to the Bar Date Motion on third-party

standing grounds and instead substantively overruled them. The court

found that there was "no possibility" of Debtor creating a practicable

§ 524(g) trust as part of a reorganization plan.[5] The court also noted that the

instant case was not particularly analogous to the bankruptcies of huge

companies with extensive mass tort liability exposure. Among other things,

it emphasized Debtor's small size and the absence of a single finding of any

---

[4] Citing *Umpqua Bank v. Burke (In re Burke)*, 2019 WL 6332370, at *2 (9th Cir. BAP Nov. 25, 2019), Debtor acknowledged that courts in the Ninth Circuit generally apply the fair contemplation test to determine when a creditor's claim arises. But Debtor pointed out that more liberal tests have been applied in other circuits—particularly in mass tort cases and asbestos injury cases. *See, e.g.*, *Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc); *Epstein v. Off. Comm. of Unsecured Creditors of Est. of Piper Aircraft Corp.*, 58 F.3d 1573, 1577 (11th Cir. 1995); *In re Johns-Manville Corp.*, 552 B.R. 221, 237 (Bankr. S.D.N.Y. 2016), *aff'd*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd*, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). Debtor observed that the Ninth Circuit has not been presented with asbestos injury claims for consideration and posited that the Ninth Circuit would depart from the fair contemplation test under such circumstances—in favor of the more liberal tests utilized in other circuits. However, according to Debtor, even if the Ninth Circuit were to adhere to the fair contemplation test for assessing the timing and existence of asbestos injury claims, its proposed bar date notice procedures would adequately inform the future asbestos litigants of the existence of their claims.

[5] Appellants have not challenged this finding on appeal.

11

asbestos in any of Debtor's products.

The bankruptcy court did not decide whether the fair contemplation test applied or whether future asbestos litigants with latent injuries held claims within the meaning of the Bankruptcy Code. Nor did the bankruptcy court specifically comment on Debtor's request to broadly bar both existing and future asbestos litigants who did not timely file proofs of claim from ever pursuing Debtor for compensation outside of bankruptcy. From the hearing transcript, it appears the issue never was addressed by the court other than to note that adequate notice appeared to have been given.

On April 17, 2024, the bankruptcy court entered its order granting the Bar Date Motion, subject to some adjustments to Debtor's proposed noticing procedures. The order set a bar date of June 3, 2024 for the filing of "Asserted Asbestos Claims." It also specified that the bar date applied "to any person or entity that asserts an Asserted Asbestos Claim against Debtor based upon the alleged exposure to Debtor's products prior to the Petition Date." The order also specified that, subject to claimants' rights under Rule 3003(c)(3), any claimant holding an Asserted Asbestos Claim who failed to file a claim on or before the June 3, 2024 bar date would "be forever barred, estopped, and enjoined from asserting such a claim against Debtor, its property, or its estate."[6]

---

[6] Rule 3003(c)(3) provides that if the time to file a proof of claim has expired, a proof of claim still may be filed under the circumstances set forth in Rule 3002(c)(2), (3),

Creditors filed 286 proofs of claim by the bar date. Another six Asserted Asbestos Claims were filed after the bar date. The filed claims totaled $1,614,505,867.76. As the bankruptcy court observed:

> The filing of many of the claims appears to have been orchestrated. Claims were filed throughout the night on the days prior to the bar date. Over 150 claimants asserted that their claim amounts are the exact same $10 million number. It appears that nearly all (if not all) holders of Asserted Asbestos Claims filed proofs of claim that consist solely of the form proof of claim with no supporting attachments or evidence.

Separate bar dates were set for governmental and general claims. Other than Asserted Asbestos Claims, a total of six priority and general unsecured claims were filed in the aggregate amount of $6,582.04.

## C. Plan proceedings and the confirmation order.

Debtor filed its proposed subchapter V plan in June 2024. As detailed in the plan, Debtor's annual earnings varied significantly from year to year over the ten years preceding its bankruptcy filing. Additionally, during the five years preceding its bankruptcy filing, it suffered a net loss of $718,304 in 2020, and another net loss of $453,102 in 2023, but it described 2019, 2021, and 2022 as "marginally profitable."

Debtor's papers in support of its plan also discussed asset valuations

---

(4), and (7). In relevant part, paragraph (7) of Rule 3002(c) permits the bankruptcy court to grant an extension of time to a creditor who shows that "notice was insufficient to give the creditor a reasonable time to file." Likewise, a showing of "excusable neglect" will suffice to permit the court to grant such an extension of time. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382–83 (1993).

and provided an analysis of potentially avoidable transfers and a chapter 7 liquidation analysis. Debtor concluded that general unsecured creditors would receive nothing if its reorganization efforts failed and it was forced to liquidate in chapter 7. Debtor also projected $233,504 in net disposable income over the next three years, which it calculated had a net present value of $203,165 ("Net Disposable Income"). These analyses, valuations, and projections were supported by declarations from Gina Nye and several of Debtor's professionals.

Debtor's financial situation also included a secured DIP loan of $300,000 from Dana Naye, which the bankruptcy court approved to help Debtor survive the bankruptcy process. The plan additionally provided that Dana Nye would provide exit financing to Debtor, on substantially the same terms as the DIP loan, if the cash on hand on the effective date was insufficient to make all plan payments due at that time.

The plan proposed to pay Class 1 creditors—consisting of all creditors holding prepetition general unsecured claims—the remainder of Debtor's Net Disposable Income after payment of all priority claims. In August 2024, Debtor modified its plan to provide for a minimum payment of $50,000 to Class 1 creditors, with any shortfall in cash to be provided by Dana Nye as part of his exit financing.

The only other class identified in the plan was the class of equity interest holders, which consisted of Dana and Gina Nye as trustees of the Nye Family Trust. The equity interest holders were to retain their interests

14

but were prohibited from receiving any distribution on account of their equity interest during the life of the plan.

The plan included injunction provisions, which in relevant part barred all creditors "that have held, currently hold or may hold a claim . . . that was stayed or discharged" from "commencing or continuing, in any manner or in any place, any action or other proceeding." The plan did not purport to identify which claims had been stayed or discharged, though it did specify that "[t]he injunction described in this paragraph . . . . is applicable to all creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date."

Appellants objected to the plan. According to them, it was not proposed in good faith because the plan would only materially benefit Debtor, its professionals, and its president. Appellants further maintained that there was little or no benefit to be derived from Debtor's "nominal payment" of $50,000 to the 288 asbestos claimants who filed claims against the estate in an aggregate amount exceeding $1.5 billion.

Appellants additionally argued that: (1) the plan should commit five years rather than just three years of its projected disposable income to fund plan payments to creditors; (2) Debtor provided insufficient evidence to support its financial projections; and (3) it was legally impermissible for the plan to purport to limit personal injury claimants to the bankruptcy claims process to redress their personal injuries.

Finally, Appellants appended a single paragraph just before the

15

conclusion of their plan objection contending that Debtor's plan failed to satisfy § 1129(a)(11). This statutory provision prohibits confirmation of a plan when it is "likely to be followed by the liquidation, or the need for further financial reorganization." Appellants reasoned that liquidation or further reorganization was likely to follow confirmation of Debtor's plan because the plan failed to provide "any form of money reserve or other reasonable means of recovery for future claimants," such as by establishing a § 524(g) trust. Without offering any facts or legal analysis, Appellants baldly posited: "this bankruptcy will not in any way affect the rights of individuals whose injuries manifest themselves post-petition, including, those individuals who are first exposed to the Debtor's products post-petition . . . ."

Debtor filed a reply in response to Appellants' plan objections. In relevant part, Debtor stated that it was untrue that the plan did not provide for future litigants. Debtor argued that any future litigants were provided for and bound by the Order granting Debtor's Bar Date Motion and by the Plan treatment proposed for Class 1 creditors. But Debtor also noted that its plan did not purport to address any asbestos personal injury claims allegedly arising from postconfirmation exposure to its products. As for Appellants' § 524(g) trust argument, Debtor acknowledged that it was not invoking its protections. But it observed that a § 524(g) trust was not a prerequisite to plan confirmation, and it had no way to fund such a trust in any event.

16

After holding a plan confirmation hearing, the bankruptcy court confirmed Debtor's plan on September 19, 2024 and issued separate written findings of fact and conclusions of law. The order not only confirmed the plan but also reiterated the plan's injunction provisions. In its findings of fact and conclusions of law, the court found that Debtor had established by a preponderance of the evidence that its plan, as modified, met all the applicable requirements under §§ 1129 and 1191 for plan confirmation. The court referenced the six declarations in lieu of direct testimony submitted by Debtor in support of its plan. It also noted that Appellants did not seek to cross-examine any of these declarants. Nor did they submit any testimonial evidence in support of their objection.

The court also compared Appellants' relatively anemic plan confirmation objection to their "pervasive opposition" to nearly every step taken by Debtor in the bankruptcy. It noted how their "response to this modest small-business reorganization has been so litigious that their actions threatened to shift all of the funds meant to pay the creditors back to paying attorneys in connection with the bankruptcy." Moreover, the court concluded that Appellants' true motive was "to derail this subchapter V chapter 11 Case to [chill] the use of subchapter V of chapter 11 in the future by other similarly situated companies." In support of this conclusion, the court cited to Appellants' "overarching and burdensome discovery efforts," their repeated statements that they sought to shutter Debtor's business and convert the case to chapter 7, and the fact that there

17

would be no recovery for unsecured creditors—including themselves—in the event of a chapter 7 liquidation.

Appellants timely appealed both the order granting Debtor's Bar Date Motion and the plan confirmation order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court commit reversible error in its bar date order?

2. Did the bankruptcy court commit reversible error when it confirmed Debtor's plan?

## STANDARD OF REVIEW

Appellants raise only legal issues on appeal, including the proper interpretation of the Bankruptcy Code. We review such issues de novo. *Irigoyen v. 1600 W. Invs., LLC (In re Irigoyen)*, 659 B.R. 1, 6 (9th Cir. BAP 2024). When we review a matter de novo, we give no deference to the bankruptcy court's decision. *Id.*; *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

## DISCUSSION

Appellants challenge both the bar date order and confirmation of Debtor's subchapter V plan. Appellants contend that both of the bankruptcy court's decisions should be reversed because future asbestos

18

litigants have no "claim" under the Ninth Circuit's fair contemplation test that could be subjected to either a bar date or a plan. Additionally, they argue that binding or discharging the claims of future litigants before they manifest injury violates their due process rights. They contend it is unfair and unreasonable to expect future litigants to make an "informed decision" to appear in the bankruptcy court when their only connection to Debtor is having used some of its products. On the other hand, Debtor has advocated for adoption of a bright line rule that asbestos claims arise upon exposure regardless of when any injury might manifest.

With one significant exception, the parties' arguments are largely outside the scope of this appeal. The purpose of the claims bar date is to establish and give notice to creditors of the deadline to file claims – not to adjudicate who actually holds a claim. True, some other circuits have ruled as a matter of law that asbestos claims arise for bankruptcy purposes upon exposure. *See, e.g., Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc); *In re Johns-Manville Corp.*, 552 B.R. 221, 237 (Bankr. S.D.N.Y. 2016), *aff'd*, 623 B.R. 242 (S.D.N.Y. 2020), *aff'd*, 2022 WL 4487889 (2d Cir. Sept. 28, 2022). The Ninth Circuit has not addressed this question, and it is immaterial to this disposition. This issue does not affect our review of either the bar date order or plan confirmation.

We focus our attention on the scope and breadth of the bar date order, which set the deadline for all asbestos litigants to file proofs of claim to participate in the bankruptcy. To that extent, it is unremarkable and

19

unchallenged. However, the bar date order went further. It enjoined every asbestos litigant from pursuing Debtor anywhere or at any time to the extent the litigant failed to timely file a proof of claim. The bar date order thus effectively discharged all asbestos liability arising from prepetition use of Debtor's products—except that asbestos litigants who filed proofs of claim could recover to the extent provided by a confirmed plan. By doing so, it goes far beyond setting the applicable deadline for filing proofs of claim and restricting receipt of a bankruptcy distribution to asbestos litigants who filed proofs of claim. This was error.

## A. The bar date order impermissibly attempted to discharge all asbestos claims.

Section 502(b)(9) generally contemplates the disallowance of proofs of claim not timely filed. However, in chapter 9 and 11 cases, there is no fixed time period for filing proofs of claims. *See Levin v. Maya Constr. (In re Maya Constr. Co.)*, 78 F.3d 1395, 1399 (9th Cir. 1996). Instead, the bankruptcy court must set a deadline as is appropriate under the circumstances of each case. Indeed, Rule 3003(c)(3) specifically requires bankruptcy courts to set such bar dates. *Id.* The purpose of the bar date "is to enable the debtor and his creditors to know, reasonably promptly, what parties are making claims and in what general amounts." *In re Stavriotis*, 977 F.2d 1202, 1205 (7th Cir. 1992) (cleaned up) (quoting *United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 173–74 (5th Cir. 1991)); *accord Grynberg v. United States (In re Grynberg)*, 986 F.2d 367, 370 (10th Cir. 1993); *see also*

*AARP v. First All. Mortg. Co. (In re First All. Mortg. Co.)*, 269 B.R. 428, 439 (C.D. Cal. 2001) ("If late-filed claims were not barred, it would never be possible to determine with finality what [bankruptcy] payments are required." (cleaned up)).

With certain exceptions not relevant here, when a creditor in a chapter 11 case fails to timely file a proof claim and fails to obtain leave to file a late-filed claim, such creditor will not be permitted to participate either in voting on the debtor's plan or in receiving distributions under the plan. *In re Grynberg*, 986 F.2d at 370 & n.4 (citing Rule 3003(c)(2)); *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 494–95 & n.5 (9th Cir. BAP 2003) (same); *see also Warner Angle Hallam Jackson & Formanek, P.L.C. v. Lock (In re LMM Sports Mgmt., LLC)*, 2016 WL 3213829, at *5 (9th Cir. BAP June 1, 2016) (explaining that Rule 3003(c)(2) "compliments [sic] and effectuates § 502(b)(9) and § 1111(a), which when read together provide that creditors in chapter 11 cases whose claims are scheduled as disputed, contingent or unliquidated must timely file a proof of claim or else their claims are subject to disallowance"). Accordingly, it is of little or no moment, here, that the bar date order provided that "[a]ny person or entity that is required, but fails, to file a proof of claim against the Debtor for an Asserted Asbestos Claim will . . . not be treated as a creditor with respect to such claim in this case, including for the purposes of voting and distribution . . . ." This provision merely reiterated the specific consequences for non-filing creditors enumerated in Rule 3003(c)(2).

21

Of greater concern is the bar date order's grant of injunctive relief against anyone with "an Asserted Asbestos Claim." We are not aware of any authority that permitted the bankruptcy court to grant an injunction within an order establishing a claims bar date as part of a contested matter. *See* Rule 7001(g).[7] Indeed, we typically treat as error the use of a contested matter to obtain relief when Rule 7001 requires an adversary proceeding. *See, e.g., Lakhany v. Khan (In re Lakhany)*, 538 B.R. 555, 561 (9th Cir. BAP 2015) (citing *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 551 (9th Cir. BAP 2002)); *GMAC Mortg. Corp. v. Salisbury (In re Loloee)*, 241 B.R. 655, 660 (9th Cir. BAP 1999). If the bankruptcy court had required Debtor to commence an adversary proceeding, it is unclear how Debtor practicably could have complied with the applicable pleading and service requirements necessary to render effective the injunctive relief it sought against all current and future asbestos litigants. *See generally Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (explaining that absent class certification, federal courts only may grant injunctive relief against parties properly before the court).

Equally troubling, the court's order mandated that anyone who used Debtor's products prepetition needed to file a proof of claim or be forever barred from recovering for asbestos injuries in any manner. In doing so, the

---

[7] Rule 7001(g) provides that an adversary proceeding is required "to obtain an injunction or other equitable relief—except when the relief is provided in a Chapter 9, 11, 12, or 13 plan."

bar date order circumvented the plan process. Sections 1141(d) and 1192 define the scope of a chapter 11 debtor's discharge and when it arises. Any discharge of debt depends, however, on confirmation of a plan under these statutory sections. We are not aware of any authority that permits a chapter 11 debtor to obtain a discharge short of plan confirmation. Nor has Debtor cited any.

It has long been established that the pre-plan rights and powers of chapter 11 debtors-in-possession should not be used to circumvent the plan process. *See Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (9th Cir. BAP 1988) ("When a sale of all or substantial assets of the estate is proposed in a Chapter 11 case under the aegis of § 363(b)(1), there is the potential for circumventing the requirements attendant to the confirmation of a Chapter 11 plan." (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1066 (2d Cir. 1983))). This restriction on the powers of debtors-in-possession necessarily applied to Debtor's request to the bankruptcy court to fix a claims bar date.

Bar date orders cannot and should not affect the rights of creditors (if any) outside of bankruptcy; they only preclude non-filing creditors from participating in the bankruptcy—and only to the extent of voting and distribution. *See In re Grynberg*, 986 F.2d at 370, *cited with approval in Dolven v. Bartleson (In re Bartleson)*, 253 B.R. 75, 81 (9th Cir. BAP 2000). In *Grynberg*, the United States held a nondischargeable tax claim. 986 F.2d at 369. The

23

Grynbergs argued that the United States' failure to file a proof of claim resulted in the disallowance of the claim as well as its discharge under their plan. But the subject plan contained no language purporting to discharge this debt. *Id.* at 368. The bankruptcy court rejected the debtors' argument, and the Ninth Circuit Court of Appeals affirmed. As the *Grynberg* court explained:

> failure to file a proof of claim before the bar date simply precludes a creditor from participating in the voting or distribution from the debtor's estate. Neither the rules nor the bar order prevents a creditor holding a nondischargeable debt who has not filed a proof of claim from collecting outside of bankruptcy.

*Id.* at 370.[8]

Unless and until Debtor confirmed its plan, all non-filing creditors effectively held nondischargeable claims because the discharge provided in § 1141(d) and 1192 had not yet arisen. The Bankruptcy Code permits no

---

[8] Section 1141(d)(1)(A) discharges "any debt that arose before the date of confirmation …." Section 101(12) defines a debt as a "liability on a "claim." Here, the claims bar date order prematurely assumed who had claims and who did not. A debtor generally may not discharge future or nonexistent "claims." In re Johns–Manville Corp., 552 B.R. at 239 ("[E]stablishing the existence of a claim 'is only the first step in determining whether [Ms. Berry's] claims were discharged.'" (quoting Placid Oil Co. v. Williams (In re Placid Oil Co.), 463 B.R. 803, 815 (Bankr. N.D. Tex. 2012) aff'd, 753 F.3d 151 (5th Cir. 2014))). A limited exception applies in asbestos cases where the debtor complies with § 524(g). This subsection enables a debtor to address future demands arising from asbestos injuries if a number of requirements are satisfied, including the appointment of a future asbestos claims representative, the establishment of a trust to pay future asbestos claims, and the entry of a channeling injunction as part of a confirmed plan. For a variety of valid reasons, Debtor did not attempt to comply with the requirements of § 524(g). Accordingly, Debtor only could discharge, through its plan, pre-existing asbestos claims.

other type of discharge of debts in chapter 11. Accordingly, the bankruptcy court erred by issuing what amounted to a discharge injunction as part of its bar date order.

We hold that an order setting a claims bar date cannot be used as a proxy for a debtor's discharge. Enjoining non-filing asbestos litigants from seeking any future recovery from Debtor is improperly broad; it would apply equally to those that do not have a "claim" for purposes of bankruptcy. More importantly, it would improperly impose an injunction apart from a confirmed chapter 11 plan or the discharge injunction. That limited provision within the bar date order is unenforceable and must be stricken. But that is all the relief that is required and justified at this time.

**B.    We need not determine which asbestos litigants hold "claims" within the meaning of the Bankruptcy Code, or whether the "fair contemplation test" applies to asbestos litigants.**

The parties have primarily argued for and against the application of the fair contemplation test to the bar date order. Appellants argue that the bankruptcy court erred in entering the injunction because future litigants cannot hold "claims" under the fair contemplation test. Debtor argues that the injunction was appropriate because asbestos litigants have a "claim" in bankruptcy upon exposure.

The Bankruptcy Code broadly defines a claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured."§ 101(a)(5)(A). Courts have used numerous approaches to examine when a claim exists for bankruptcy purposes—for asbestos claims as well as other types of claims. *See, e.g., In re Grossman's Inc.*, 607 F.3d at 121-25; *Epstein v. Off. Comm. of Unsecured Creditors of Est. of Piper Aircraft Corp.*, 58 F.3d 1573, 1576-77 (11th Cir. 1995); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274–78 (5th Cir. 1994); *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928-31 (9th Cir. 1993); *In re Johns-Manville Corp.*, 552 B.R. at 232-37.

Several courts have adopted the rule of law advocated by Debtor. Addressing when an asbestos claim exists for purposes of bankruptcy, the Third Circuit surveyed various approaches in *In re Grossman's Inc.*, 607 F.3d at 121-25. The Third Circuit in *Grossman's Inc.* concluded that "[i]rrespective of the title used, there seems to be something approaching a consensus among the courts that a prerequisite for recognizing a 'claim' is that the claimant's exposure to a product giving rise to the 'claim' occurred pre-petition, even though the injury manifested after the reorganization." *Id.* at 125. Similarly, a bankruptcy court in the Second Circuit reviewed the various approaches applied to determine when an asbestos claim arises in *In re Johns–Manville Corp.*, 552 B.R. 232-37. It observed that "courts have repeatedly found that prepetition exposure to asbestos giving rise to a post-petition injury manifesting constitutes a prepetition claim in bankruptcy." *Id.* at 237.

The Ninth Circuit has not specifically addressed when an asbestos

26

claim exists in bankruptcy. More generally, it has adopted and applied the fair contemplation test to evaluate when claims exist. In *In re Jensen*, 995 F.2d at 928-31, the Ninth Circuit considered whether a claim for environmental cleanup liabilities was discharged by the debtor's bankruptcy. The parties vigorously disputed whether the state government's CERCLA[9] rights constituted a "claim" that had been discharged even though a cause of action did not mature until after the bankruptcy. The Ninth Circuit attempted to balance or reconcile competing concerns by picking a standard or test for ascertaining the outer boundary of the term "claim." It canvased and assessed the various existing tests for determining whether and when a claim arises, including the conduct approach, the relationship approach, the fair contemplation approach, and the right to payment approach. *Id.* It ultimately selected the fair contemplation test as striking the appropriate balance between the competing policy concerns. *Id*. at 930-31 In doing so, the Ninth Circuit raised the concern that the conduct approach failed to account for the creditor's potential lack of knowledge that its rights existed. *Id*. at 930. *Jensen* similarly criticized the "expansive relationship approach" because unless circumscribed it "takes on the characteristics of and thus suffers from the same infirmities as the [prepetition conduct] approach." *Id.* (citations omitted).

---

[9] "CERCLA" refers to the  Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675.

The Ninth Circuit subsequently has articulated the fair contemplation test as follows: "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633, 638 (9th Cir. 2018) (citation omitted). Since *Jensen*, the Ninth Circuit has consistently applied the fair contemplation test to ascertain whether a bankruptcy claim existed in a variety of situations. *Id.* (applying fair contemplation test to assess whether claim arose prepetition for condominium assessments accrued postpetition); *see also SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 838 (9th Cir. 2009) (applying fair contemplation test to assess whether claim arose prepetition for attorney's fees accrued postpetition but arising from a prepetition contract). There are several other examples of Ninth Circuit decisions similarly applying the fair contemplation test. *See, e.g., Picerne Constr. Corp. v. Castellino Villas, A.K.F. LLC (In re Castellino Villas, A.K.F. LLC)*, 836 F.3d 1028, 1035-36 (9th Cir. 2016) (again applying fair contemplation test to assess whether claim arose prepetition for attorney's fees accrued postpetition but arising from prepetition contract); *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000) (applying fair contemplation test to assess whether tax claim arose prepetition for taxes assessed postpetition but arising from debtor's prepetition fuel sales); *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996 (9th Cir. 2006) (applying fair contemplation test to assess when claims

for employment discrimination arose); .

Both parties press for a determination of the applicable law concerning when asbestos claims arise. But the bankruptcy court did not make such a determination. There is nothing in its orders or in its oral or written rulings discussing the fair contemplation test. Moreover, the Ninth Circuit's application of the fair contemplation test typically requires a fact-specific examination of the surrounding circumstances before determining who holds a claim and who does not. *See, e.g., In re ZiLOG, Inc.*, 450 F.3d at 1001-02; *In re Cool Fuel, Inc.*, 210 F.3d at 1007; *In re Jensen*, 995 F.2d at 931. In contrast, we have no specific claim before us for consideration, or even a future claims representative present.

It is not surprising that the issue of whether future asbestos litigants hold asbestos injury claims in this case was not thoroughly or persuasively analyzed and developed. Unlike the debtors in the asbestos decisions cited herein, Debtor here vigorously denies that any asbestos exposure occurred. Additionally, in stark contrast to the future litigants they purport to speak for, Appellants each indisputably contemplated the existence of their respective asbestos claims prepetition because each already was involved in prepetition asbestos litigation against Debtor. This means that Appellants are poorly situated to assert the rights of future asbestos litigants as the claims bar date did not harm Appellants. They already commenced prepetition actions against Debtor, and these asbestos claimants (as opposed to the law firms representing them) have filed

proofs of claim.

Appellants have alleged that they will be harmed by allowing future asbestos litigants to participate in the distribution to unsecured creditors. This argument is spurious and misstates the role of the bar date order, which merely sets the deadline for claims to be filed. Whether those who file proofs of claim hold a claim that should be allowed is a question for the claims adjudication process. But the filing of a claim itself does not harm other creditors. To the extent that proofs of claim have been filed for latent asbestos injuries that do not qualify as claims, they remain subject to disallowance through the claim objection process. It is not the role of a claims bar date order to provide a premature opinion regarding who holds a "claim" within the meaning of the Code. In short, the claims bar date could not create a claim, allow a claim, or discharge a claim.

In sum, entry of the bar date order does not require our determination of whether the rights of future asbestos litigants constitute a "claim" within the meaning of the Code. In other words, whether unidentified future asbestos litigants have a claim subject to Debtor's bankruptcy is not properly before us.[10] Applying the fair contemplation

---

[10] A significant number of future or latent asbestos litigants did file proofs of claim by the claims bar date. Yet, Debtor has candidly detailed why it cannot take advantage of the provisions of § 524(g) and has not provided for a future claims representative or reserved any payment for the so-called "existing claims" held by litigants who have filed proofs of claim but who have not yet manifested any asbestos injuries. These filed proofs of claim include no supporting documentation to establish their claims or support the significant damages uniformly asserted in each such claim.

test, as we must given Ninth Circuit precedent, it is unclear and unknowable on this record whether any future, late-filed asbestos proof of claims were within the fair contemplation of the filing asbestos litigants in time to qualify as a "claim" within the meaning of the Code. Nor does this appeal compel us to examine whether some other test should apply to future asbestos litigants. The answer to these questions remain for another day when the issue is properly presented and developed by a proper claimant.

## C. Any questions concerning notice and due process are not properly presented in this appeal.

Appellants' only other argument on appeal of the bar date order concerns due process. However, any alleged due process violation does not constitute reversible error absent prejudice. *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 776-77 (9th Cir. 2008), *partially abrogated on other grounds as recognized by Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021). For the same reasons we concluded that Appellants have not been harmed by the bar date order, we

---

At oral argument in this appeal, counsel advised that Debtor is objecting to such claims for lack of support. Under Debtor's arguments, this suggests that future asbestos claimants may have been placed in an untenable Catch 22 situation of having to file proofs of claim – to share in a $50,000 distribution which may be paid on the effective date – without any manifested injuries to permit allowance of their claims. The plan contains no provision for future litigants to recover anything after that distribution despite Debtor's acknowledgement that asbestos injuries may manifest decades after exposure. Rather, it argues that such future asbestos claimants can assert excusable neglect for their failure to file a proof of claim well after the $50,000 has been disbursed.

similarly conclude that there is no prejudice to support Appellants' due process argument.

Any determination of whether a claim has been discharged "cannot be divorced from fundamental principles of due process." *In re Grossman's Inc.*, 607 F.3d at 125. Debtors must provide creditors with sufficient notice of the bankruptcy and claims bar date to satisfy its constitutional due process obligations. *See In re Energy Future Holdings*, 949 F.3d 806, 822-24 (3d. Cir. 2020); *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 154-58 (5th Cir. 2014). This is because due process requires notice "reasonably calculated" to apprise interested parties of the pendency of the action and the opportunity to object. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). However, "[t]he Supreme Court has 'recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.'" *In re Johns–Manville Corp.*, 552 B.R. at 240 (quoting *Mullane*, 339 U.S. at 317 (citations omitted)). "[F]or unknown creditors whose identities or claims are not reasonably ascertainable, and for creditors who hold only conceivable, conjectural or speculative claims, constructive notice of the bar date by publication is sufficient" to satisfy due process. *Id.* (collecting cases).

Here, Debtor published notice of the bar date in the New York Times,

the Los Angeles Times, Variety,[11] Mealey's Litigation Report Asbestos, and Mealey's Asbestos Bankruptcy Reports. Debtor additionally posted a link to the bar date notice on its website and its Instagram page. Appellants argue that Debtor failed to prove that this notice was adequate and sufficient to future asbestos litigants. Put differently, Appellants argue that the notice of the bar date violated the due process rights of unknown future litigants. They make no argument that the notice violated their own rights and fail to explain why they have standing to make such a broad and sweeping challenge or how they were harmed. Rather, their argument is again premised on the belief that all future asbestos litigants who have not manifested an injury do not have claims within the meaning of § 101(5). Yet, no future asbestos litigant has raised this argument. Whether Debtor's notice of the claims bar date satisfied the due process rights of future asbestos litigants raises a question for another day, to be raised by someone who (1) holds such rights, and (2) contends that he or she was not provided adequate notice despite Debtor's efforts. *See, e.g., In re Placid Oil Co.*, 753 F.3d at 153, 157 (holding that notice published in bankruptcy commenced in 1986 was sufficient to preclude employee and spouse from pursuing state court action commenced in 2008 for asbestos-related injuries); *In re Johns–Manville Corp.*, 552 B.R. at 228, 229-30, 240-242 (holding that notice

---

[11] *Variety*—an entertainment industry publication—evidently was included in the list of periodicals in which to publish because of the widespread use of Ben Nye products in the entertainment industry.

published in bankruptcy commenced in 1982 was sufficient to preclude action by unknown future litigant brought roughly 30 years later).

Appellants, who each had commenced prepetition existing litigation against Debtor or are counsel for those litigants, have suffered no injury and are ill-suited to represent unknown future litigants as to the sufficiency of the bar date notice. To hold otherwise would violate well-accepted third-party standing principles. *See Pony v. Cnty. of L.A.*, 433 F.3d 1138, 1147-48 (9th Cir. 2006). However, we more broadly hold as a factual matter that Appellants' expressed concerns regarding the bar date notice are premature. There is no party denying the sufficiency of Debtor's notice as applied to them. This issue, as well as the scope of asbestos claims, will only be ripe for decision if and when someone who has not timely filed a proof of claim seeks to recover from Debtor. *See generally In re Energy Future Holdings Corp*, 949 F.3d at 816 (examining ripeness and whether the appellants' arguments there were sufficiently "crystallized"—factually developed—to provide the court with enough information to decide the matter conclusively).

## D. Appellants' arguments do not support reversal of the confirmation order.

In their appeal from the bankruptcy court's confirmation order, Appellants abandon their objections to confirmation raised before the bankruptcy court. They now make the exact same arguments they made in their appeal from the bar date order. They again contend that the future

litigants—with only latent asbestos injuries—have no "claim" under the Bankruptcy Code, so there was no claim to discharge via Debtor's confirmed plan. They additionally insist that the due process rights of future litigants were violated by plan confirmation. They maintain that future litigants had no meaningful opportunity to appear in Debtor's bankruptcy case and be heard regarding matters that affected their rights against Debtor.

Nothing in the confirmation order determined whether future asbestos litigants hold claims. Nor did the confirmation order determine whether future asbestos litigants are subject to the plan's injunction provisions. Similarly, the plan did not include a channeling injunction to address future claims. In other words, the bankruptcy court's decision contains no ruling addressing the specific rights of, and restrictions on, future asbestos litigants. Absolutely nothing in the plan's injunction provisions, or in its provisions governing the treatment of general unsecured creditors, identifies future asbestos litigants as being subject to these provisions. Instead, both the plan and the confirmation order left these questions for another day—if, or when, they are presented by one or more future asbestos litigants. Rather, the confirmed plan merely provides for payment and discharge of "claims"–-whosoever might hold them. Accordingly, Appellants have failed to demonstrate any error in confirmation of Debtor's plan.

Appellants' confirmation order appeal effectively asks for an

advisory opinion regarding the rights of and restrictions on future asbestos litigants. As we indicated in our discussion of the bar date order, we decline their invitation to render such an opinion.

**CONCLUSION**

For the reasons set forth above, we hold that the bar date order impermissibly enjoined anyone who used Debtor's products prepetition from pursuing any future recovery for an asbestos claim apart from its bankruptcy. This injunctive relief went beyond the permissible scope of a bar date order. Similarly, it was error to use of the bar date order to define who holds a "claim" against Debtor for purposes of the bankruptcy. Accordingly, Paragraphs 8 and 9 of the bar date order are hereby ORDERED CORRECTED to read:

> 8.      The Asserted Asbestos Claims Bar Date applies to any person or entity that asserts a claim as defined by 11 U.S.C. § 105(5) against the Debtor based on the alleged exposure to the Debtor's products prior to the Petition Date. Notwithstanding the foregoing, nothing in this Order will prejudice current and/or future claimants' rights as set forth in Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure.

> 9.      Any person or entity that is required, but fails, to file a proof of claim against the Debtor for an asbestos claim, in accordance with this Order on or before the Asserted Asbestos Claims Bar Date, will not be treated as a creditor with respect to such claim in this case, including for the purposes of voting and distribution with respect to any chapter 11 plan of reorganization that may be filed in this bankruptcy case.

As corrected, the bar date order is AFFIRMED. Also, the confirmation

order is AFFIRMED.